IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. MJM-24-0039 |
| | * | |
| KELLY BOWERS, | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN AID OF SENTENCING

The Government submits this sentencing memorandum in advance of Defendant Kelly Bower's sentencing hearing, scheduled for Tuesday, January 27, 2026 at 12:00 p.m. For the reasons that follow, this Court should impose a total sentence of 84 months' imprisonment which includes the five-year mandatory minimum term of imprisonment for the Defendant's convictions at Counts One and Two.

**I.    BACKGROUND**

    **A.    Defendant's Conduct**[1]

From in or about August 2022, and continuing until on or about January 25, 2024, in the District of Maryland, Defendant Kelly Bowers conspired with others to possess with the intent to distribute cocaine and fentanyl and did, in fact, possess cocaine and fentanyl with the intent to distribute them. Investigators identified the Defendant as a member of a drug trafficking organization known as "the Newtowne 20 DTO" that supplied drugs to individuals in the Annapolis area of Maryland.

---

[1] The conduct described herein is consistent with the Stipulation of Facts set forth in Attachment A of the parties' Plea Agreement, entered into by the parties and accepted by this Court on November 18, 2025. ECF No. 231.

1

Pursuant to a court-authorized wiretap, investigators intercepted wire and electronic communications to and from a phone used by the Defendant during the course of the drug trafficking conspiracy. Numerous conversations were intercepted allowing investigators to identify individuals, including the Defendant and other Newtowne 20 DTO members, who were involved in drug trafficking. Throughout his involvement in the conspiracy, it was reasonably foreseeable to the Defendant and within the scope of the conspiracy that he or other members of the conspiracy would distribute at least at least 40 grams but less than 160 grams of fentanyl, as well as quantities of cocaine, heroin in furtherance of the conspiracy.

Investigators also learned during the investigation that the Defendant was one of the main distributors for the Newtowne 20 DTO. The Defendant was intercepted over the court authorized federal wiretap, that recorded several calls between him and his customers as well as between him and his co-conspirators.

Additionally, investigators conducted physical surveillance and observed Bowers engaged in a drug transaction. The Defendant was also known to conduct counter-surveillance and often identified the officers when they were conducting surveillance on him. For example, on April 6, 2023, he yelled to one of the investigators from his vehicle "you know I can see you following me. This is getting really annoying!" Later on July 12, 2023, the Defendant quickly identified the surveillance team, yelled at them, and attempted to block their vehicle while threating to kill one of the agents. The Defendant then posted about it on his Instagram page. Specifically, he rolled down his driver's window and told the investigator who was inside his vehicle, "Are you following me? If you don't stop following me, I'm going to fucking kill you."

Bowers has also posted photos of guns on his Instagram page. One photo depicted guns wedged between the driver seat and the center console, investigators believed that Bowers was in the driver's seat.

On November 27, 2023, investigators from Anne Arundel County Police Department ("AACPD") conducted a traffic stop of a Nissan Cargo Van registered to and being driven by Bowers. After AACPD officers observed Bowers, conduct a hand-to-hand transaction near 130 Hearne Road in Annapolis with a known user of controlled substances, the officers initiated the traffic stop. Initially, Bowers refused to stop and continued to drive to an adjacent shopping center. Eventually, Bowers stopped and was ordered to exit the vehicle. A second officer detained the female and recovered drugs from her which later tested positive for cocaine. As the officer approached the vehicle, he observed a white rock-like substance on the driver's seat which field tested positive for cocaine. During a subsequent search of the van, officers recovered two plastic bags containing a pink substance from two separate cups containing liquid in the center console of the van. Officers believed that Bowers attempted to destroy the controlled substances when he initially refused to stop. Officers arrested Bowers for the drug offense, but he was released later that night. The pink substance tested positive for fentanyl (0.25 net grams) and the white rock-like substance tested positive cocaine (0.46 net grams).

During the investigation, investigators identified multiple vehicles and locations in and around Annapolis, Maryland that were used by the Newtowne 20 DTO as residences and stash houses. On January 25, 2024, agents executed search warrants on eight (8) locations and four (4) vehicles and executed arrest warrants on nine (9) individuals.

### B. Indictment and Guilty Plea

On February 7, 2024, the Defendant was charged with five codefendants in a single-count Indictment with conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846. ECF No. 84 (Indictment). On May 15, 2024, the Defendant was charged in two counts of a six-count Superseding Indictment with conspiracy to distribute and possess with intent to distribute controlled substances, specifically, 40 grams or more of a mixture or substance containing a detectable amount of fentanyl and a quantity of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 846 (Count One), and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841 (Count Two). ECF No. 105 (Superseding Indictment). On November 18, 2025, the Defendant pled guilty to Counts One and Two of the Superseding Indictment. ECF No. 231 (Arraignment). On November 18, 2025, this Court issued an Order scheduling a sentencing hearing initially for January 22, 2026 at 12:00 p.m. ECF No. 233. The Government asked for a brief extension, which was granted and the sentencing hearing is now set for January 27, 2026 at 12:00 pm.

## II. STATUTORY PENALTIES AND ADVISORY GUIDELINES CALCULATION

### A. The PSR properly calculates an applicable guidelines range of 151 to 188 months because the Defendant qualifies as a career offender.

A Pre-Sentence Investigation Report ("PSR") was completed by the U.S. Probation and Pretrial Services Office on December 18, 2025. ECF No. 236. The statutory maximum penalty for Count One is a minimum sentence of five years and a maximum sentence of 40 years and for Count Two it is 20 years' imprisonment, followed by a minimum of four and three years of supervised release, respectively. 21 U.S.C. §§ 841(a)(1), 846. The PSR calculates a base offense level of 24 pursuant to U.S.S.G. 2D1.1(c)(10), because the offense involved at least 40 grams but less than 160 grams of fentanyl. PSR at ¶ 23. Further, for the Defendant's convictions pursuant to

U.S.S.G. § 4B1.1 is a level 34 because the instant offenses of conviction are felony-controlled substance offenses, and the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.[2] PSR at ¶ 29. Following a three-level downward adjustment pursuant to U.S.S.G. § 3E1.1 for the Defendant's prompt acceptance of responsibility, the final offense level is 31. PSR at ¶¶ 29 - 31. The PSR further calculates a criminal history category of VI based on both fifteen criminal history points and the Defendant's career offender designation. PSR at ¶¶ 45 - 48. The established advisory guidelines range for a final offense level of 29 and a criminal history category of VI is 151 to 188 months.

The Plea Agreement contemplated a final offense level of 21, and given the seriousness of the offense, the parties agreed that the C-Plea range for the Court's consideration should be 84 months. As such, the Government submits that the guidelines level should be calculated as 77-96 months (adjusted offense level 21, criminal history category VI). The government's recommendation of 84 months falls within the middle of the parties' stipulated C-plea sentence recommendation. Given the defendant's role in this case the 84-month imprisonment recommendation is reasonable and appropriate.

### III.   LEGAL STANDARD

In *United States v. Booker*, the Supreme Court held that the Guidelines are advisory and not mandatory, and the Court made clear that district courts are still "require[d] […] to consider Guidelines ranges" in determining sentences but also may tailor the sentence to other statutory concerns. *United States v. Booker*, 543 U.S. 220, 245 (2005); *see* 18 U.S.C. § 3553(a). In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court explained the proper procedure and order

---

[2] Counts One and Two group for purposes of calculating the base offense level pursuant to U.S.S.G. § 3D1.2(d). PSR ¶ 22.

5

of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id*. at 49 (citation omitted).

Next, a sentencing court should "consider all of the §3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the sentencing court] may not presume that the Guidelines range is reasonable. [The sentencing court] must make an individualized assessment based on the facts presented." *Id*. at 49-50 (citation and footnote omitted). The Court ultimately must impose a sentence that is "sufficient, but not greater than necessary" to "reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a).

### IV.   ARGUMENT

A sentence of 84 months' imprisonment is the appropriate sentence in this case. An 84-month sentence adequately reflects the seriousness of the offense, the need to protect the public, the history and characteristics of the Defendant, and the need to avoid unwarranted sentencing disparities.

The Defendant is convicted of trafficking quantities of fentanyl, cocaine, and heroin to drug customers in and around the Annapolis, Maryland area. Drug distribution itself is a serious offense, but the distribution of fentanyl has shown to frequently result in overdose and death. While drug trafficking in general is often characterized as a "victimless" crime, the fatal consequences of fentanyl use are well-documented. Preliminary data indicates that drug overdose deaths in the

U.S. surpassed 109,000 in 2022 and nearly 70% of those deaths involved synthetic opioids other than methadone, primarily illegally manufactured fentanyl and fentanyl analogs (IMFs). *Routes of Drug Use Among Drug Overdose Deaths — United States, 2020–2022*, Centers for Disease Control and Prevention, Morbidity and Mortality Weekly Report (MMWR) https://www.cdc.gov/mmwr/volumes/73/wr/mm7306a2.htm (last accessed August 5, 2025). In its analysis of the severity of the Defendant's drug distribution conviction, the Court can, and should, consider the fact that the Defendant was distributing a dangerous and potentially deadly substance. *See United States v. Roy*, 88 F.4th 525, 532 (4th Cir. 2023) ("Far from constituting significant procedural error, it was eminently reasonable for the district court to consider fentanyl's lethality and the devastating impact it has wrought upon communities across America.").

With regard to his criminal history, the Defendant's prior adult convictions include several felony and misdemeanor drug convictions, first degree assault, driving infractions, and a handgun violation. Specifically, he has one prior conviction for firearm possession and first-degree assault conviction (2007), three prior convictions for CDS distribution (2013, 2014 and 2017), as well as a misdemeanor drug conviction for possess with intent to use drug paraphernalia (2018), two prior convictions for attempt to elude police, failing to stop (2013 and 2020). PSR ¶¶ 39-44. Notably, the instant offense is now the Defendant's fourth drug distribution conviction. A sentence of 84 months is therefore warranted to account for the seriousness of the Defendant's offense and his demonstrated history of trafficking dangerous drugs, despite past convictions and prior periods of incarceration.

V.     **THE KINDS OF SENTENCES AVAILABLE**

The "kind of sentences available," 18 U.S.C. § 3553(a)(3), includes imprisonment. At this time, all the co-conspirators have plead guilty and only one remains unsentenced. To avoid

unwarranted sentence disparities among the co-defendants, below is a chart detailing the roles of each.

| Defendant | Charges | Role | Criminal History/Score | Sentence |
|---|---|---|---|---|
| Leonard Simms 35 years old | Cts 1 and 2 (Superseding Information) | Drug Distributor | BOL 24/III (Asslt 2nd, 1 felony and misd drug conviction, theft, open container, (2) poss MJ) | 57 months, 3-years S.R. |
| Amber Naylor 28 years old | Cts 1 and 6 | Drug Distributor | BOL 12/I (Zero-Pt) (theft, poss MJ, negligent driving) | Time Served/home confinement |
| Raheem Allsup 27 years old | Ct 1 | Drug Distributor | BOL 12/I - BOL 29/VI – CO (HG/two felony drug convictions, trespass) | C-Plea 48 months |
| Keith Williams | Cts 1 and 5 | Drug Distributor | BOL 24/III – (felony drug conviction, (3) misd drug convictions) | 68 Months, 3-years S.R. |
| Isiah Naylor 28 years old | Cts 1 and 6 | Drug Distributor | BOL 18/III - BOL 29/VI – CO (firearm, (2) felony drug convictions, accessory after the statute) | *Pending Sentencing – recommended* C-Plea 48 months |

Investigators identified the defendants Kelly Bowers, Leonard Simms, Isiah Naylor, Amber Naylor, Raheem Allsup, and Keith Williams as some of the individuals involved in the DTO. In this instance, Bowers is most similar to Isiah Naylor (I. Naylor) and Raheem Allsup based on their criminal history, but Bowers role in this investigation was the most significant as he was believed to be the main distributor for the DTO.

Simms, I. Naylor, and Williams all were associated with Bowers and were selling drugs as distributors for the Newtowne 20 DTO. Drugs or drug paraphernalia were later recovered at Allsup's house, and from Naylors' house, investigators recovered cocaine, suboxone strips and a firearm. Investigators recovered marijuana at Williams house. Williams was believed to be the primary supplier for Simms and other members of the DTO. Simms sold heroin to an undercover

8

officer on multiple occasions. Investigators intercepted Bowers over two separate phones for multiple months in the investigation and he was intercepted making numerous phone calls discussing drug trafficking with associates, suppliers, and customers throughout the investigation. A sentence of 84 months reflects his role in this investigation, his actions throughout the investigation, as well as his criminal history.

## VI.   CONCLUSION

An 84-month sentence is the appropriate disposition in this case. Such a sentence is sufficient but not greater than necessary under the applicable factors set forth under 18 U.S.C. § 3553(a), including the seriousness of the offense, the need to protect the public, the history and characteristics of the Defendant, and the need to avoid unwarranted sentencing disparities and promote respect for the law. Accordingly, the Government respectfully requests that this Court impose a total sentence of 84 months' imprisonment to run concurrent with Counts One and Two, with includes the first 60 months (in Count One) as a mandatory term of imprisonment followed by 3 years of supervised release for the Defendant's convictions at Counts One and Two.

                                                 Respectfully submitted,

                                                 Kelly O. Hayes
                                                 United States Attorney

By:          /s/
       LaRai N. Everett
       Jonathan S. Tsuei
       Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 16, 2026 a copy of the foregoing Sentencing Memorandum was delivered via ECF to Richard Bardos, counsel for the Defendant.

By:     /s/
       LaRai N. Everett
       Assistant United States Attorney